■ In the Matter of MANUFACTURERS AND TRADERS TRUST COMPANY (Formerly MERCHANTS NATIONAL BANK AND TRUST COMPANY OF SYRACUSE), a Cotrustee of the DAVID SMALL TRUST Under Agreement Dated December 28, 1938, Respondent-Appellant, to Resign as Trustee and For Approval of its Accounting. JOAN SMALL FANELLI et al., Individually and as Beneficiaries of the TRUST OF DAVID SMALL, Appellants-Respondents. JOAN SMALL FANELLI et al., Individually and as Beneficiaries of the Trust of David Small, Appellants-Respondents, v M&T BANK CORPORATION, as Trustee of the TRUST OF DAVID SMALL, Respondent-Appellant. [886 NYS2d 529]—

Appeal and cross appeal from an order of the Surrogate's Court, Onondaga County (Peter N. Wells, S.), entered May 15, 2008. The order, among other things, granted that part of the petition of Manufacturers and Traders Trust Company (formerly Merchants National Bank and Trust Company of Syracuse) to resign as cotrustee.

It is hereby ordered that the order so appealed from is unanimously modified on the law by awarding petitioner-defendant and respondents-plaintiffs counsel fees and as modified the order is affirmed without costs, and the matter is remitted to Surrogate's Court, Onondaga County, for further proceedings in accordance with the following memorandum: In 1938, David Small (decedent) executed an irrevocable inter vivos trust (Trust) for the benefit of his surviving children and the surviving issue of his deceased children. Decedent named himself trustee of the Trust, and the life of the Trust was measured by the lives of the two oldest children of decedent and his wife. Following the creation of the Trust, decedent and his wife had four more children. The Trust provided for the distribution of income and principal.

In 1968 decedent commenced a proceeding in Supreme Court seeking to remove himself as trustee. The court appointed decedent's wife and the predecessor to petitioner-defendant, Manufacturers and Traders Trust Company (M&T), as successor trustees. Those trustees thereafter petitioned the court to appoint one of the children, respondent-plaintiff James D. Small, as a third trustee. This action arises out of various transactions and investment decisions involving M&T and the other cotrustees. In 2002 the beneficiaries of the Trust commenced an action alleging that M&T was paying itself commissions on the principal on at least an annual basis since 1968 in violation of the terms of the Trust and that M&T wrongfully invaded and dissipated Trust principal to pay its annual or periodic commissions. They sought an order removing M&T as trustee, directing the return of all fees, commissions and expenses paid to M&T from Trust assets, compensatory and punitive damages, and termination of the Trust. Prior to the resolution of that action, M&T in turn commenced a proceeding in Surrogate's Court seeking settlement of an interim accounting of the Trust and permission to resign as cotrustee of the Trust, along with

approval of the interim accounting for the period from May 22, 1968 through December 31, 2003 and approval of the costs and expenses of the legal proceedings from the Trust corpus. The action and proceeding were consolidated, for determination in Surrogate's Court.

M&T then filed a separate petition with the Surrogate, seeking "advice and direction" pursuant to the SCPA. On the appeal and cross appeal from the Surrogate's ensuing decree, this Court concluded that the Trust unambiguously directed that $10,000 be paid annually to each child, regardless of age (*Matter of Manufacturers & Traders Trust Co. [Small]*, 42 AD3d 936, 937 [2007]). We further concluded that the Surrogate erred in failing to determine whether the Trust required distribution of an amount equal to the annual fixed appreciation in value of the original issue discount bonds owned by the Trust, and we remitted the matter to Surrogate's Court to determine that issue (*id.* at 938).

Upon remittal, the Surrogate conducted a bench trial and thereafter granted that part of M&T's petition to resign as cotrustee. The Surrogate also determined that the use of temporary investment funds (TIFs) by M&T was reasonable and proper given "the broad investment powers set forth in the Trust." With respect to the original issue discount bonds, the Surrogate determined that the appreciation in value of those bonds was income that was distributable based on the Trust language and EPTL 11-A-4.6 (b). The Surrogate further concluded, however, that M&T did not breach its fiduciary duty to respondents-plaintiffs (hereafter, plaintiffs) by selling off those bonds to distribute accretion because there was no credible evidence that M&T acted without the approval of at least one of the cotrustees. The Surrogate determined that distribution of income generally was one of the paramount goals of decedent.

With respect to commissions collected by M&T, the Surrogate determined that the Trust terms limited M&T to receiving compensation at the statutory rates payable to a sole testamentary trustee. The Surrogate also determined that, because the Trust provided for commissions to be paid at the rates provided by the laws of the State of New York, M&T was entitled to commission rates in effect pursuant to the controlling law at the time those commissions were collected rather than pursuant to the controlling law at the time of the creation of the Trust. The Surrogate directed M&T "to amend its account to set forth its commissions in compliance" with the Surrogate's determination with respect to commissions and to consider various factors

when making its calculations. The Surrogate concluded that the amount of the commissions collected by M&T over the years may have exceeded the amount to which it was entitled, and ordered that M&T be "surcharged interest" at the statutory rate set forth in CPLR 5004 on the excess amount collected by it during its management of the trust.

Upon our review of the record, we conclude that there is no evidence that M&T sold Trust assets to pay itself unauthorized annual commissions on principal and thus, contrary to plaintiffs' contention, there is no basis for an award for appreciation/lost investment value damages (*see Scalp & Blade v Advest, Inc.,* 309 AD2d 219, 226-227 [2003]). We further conclude that the Surrogate properly determined that M&T was entitled to collect commissions at rates allowed by SCPA 2308 as that law evolved. Also contrary to plaintiffs' contention, the opinion of a representative of M&T is not dispositive on the issue of the rate of commissions to which M&T was entitled. Rather, the language of the Trust instrument itself is dispositive (*see Hemingway v Hemingway Found.,* 193 AD2d 559 [1993]), and here that language does not limit the rate of commission to the rate allowed by New York State law at the time the Trust was created (*cf. Matter of Lehman v Irving Trust Co.,* 55 NY2d 97, 100-101 [1982]). We further conclude that the Surrogate properly determined that SCPA 2308, not SCPA 2309, prescribed the proper rate of commissions. The former statute applies to lifetime trusts created on or before August 31, 1956, and here the Trust was created on December 28, 1938.

We further reject plaintiffs' contention that the investment of trust funds into TIFs was in violation of the prudent person rule of investment applicable in the period from 1973 to 1981 (*see Matter of Janes,* 90 NY2d 41, 49 [1997], *rearg denied* 90 NY2d 885 [1997]). That standard, set forth in EPTL 11-2.2 (a) (1) provides that "[a] fiduciary holding funds for investment may invest the same in such securities as would be acquired by prudent [persons] of discretion and intelligence in such matters who are seeking a reasonable income and preservation of their capital" (*see generally Matter of Donner,* 82 NY2d 574 [1993]). Reading the Trust as a whole, we conclude that one of its objectives is production of income, and there was testimony from M&T's expert to that effect. Thus, the Surrogate did not err in concluding that the placement of trust funds into TIFs did not violate the objectives of the Trust.

We modify the order, however, with respect to counsel fees. The Surrogate should have granted in part M&T's request for counsel fees based on PARAGRAPH FIFTEENTH of the Trust, which

provides that reasonable counsel fees, costs and disbursements and the necessary expenses of the trustee shall be payable from the Trust estate or the income of it as it may be appropriate. Because plaintiffs asserted several unfounded causes of action and objections to the accounting, M&T is entitled to "reasonable counsel fees." We therefore modify the order by awarding M&T counsel fees, and we remit the matter to Surrogate's Court to determine the amount of reasonable counsel fees incurred by M&T in defending against those unfounded causes of action and objections to the accounting. Plaintiffs similarly are entitled to an award of counsel fees and, although the Surrogate had the authority to award them such fees (*see Matter of Garvin*, 256 NY 518, 521 [1931]), the Surrogate chose not to do so. Plaintiffs would not have incurred certain fees had they not been required to commence the action to obtain the commissions wrongfully collected by M&T. We therefore further modify the order by awarding plaintiffs counsel fees, and we direct the Surrogate on remittal to determine the amount of reasonable counsel fees incurred by them with respect to the cause of action and objection concerning M&T's unauthorized annual commissions on principal. Present—Martoche, J.P., Smith, Peradotto, Carni and Green, JJ.